# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ST. JUDE MEDICAL S.C., INC.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>LOUISE MARIE JANSSEN-COUNOTTE<br><br>　　　　　　Defendant. | Case No.:　14-cv-877<br><br>**DECLARATION OF<br>DENIS GESTIN** |

　　　Denis Gestin declares pursuant to 28 U.S.C. § 1746:

　　　1.　I am the President of St. Jude's International Division ("St Jude ID"). I have worked for St. Jude ID since April 1, 1997, serving in a variety of capacities. I was appointed to my current position on January 1, 2008.

　　　2.　I make this declaration in support of St. Jude Medical S.C., Inc.'s ("St. Jude") application for a temporary restraining order, as well as preliminary and permanent injunctive relief to prevent Louise Marie ("Marlou") Janssen-Counotte from taking a position with Biotronik, Inc. ("Biotronik"), one of St. Jude's direct competitors.

**Ms. Janssen-Counotte's Role**

　　　3.　Prior to her resignation, Ms. Janssen-Counotte was St. Jude ID's Vice President in charge of all St Jude ID product lines, including cardiac rhythm management ("CRM"), sales in Germany, Austria, The Netherlands, Poland, Eastern Europe, the Middle East, India, and South Asia. She was an employee of St. Jude Coordination Center BVBA and St. Jude Medical Netherland B.V.

4. Ms. Janssen-Counotte started working for St. Jude ID in January 2012. After serving as St. Jude ID's Vice President of Neuromodulation EMEAC (Europe, Middle East, Africa and Canada) for one year, Ms. Janssen-Counotte became Vice President in charge of all St. Jude ID sales, including CRM sales, in January 2013 for a large part of EMEA (Europe, Middle East and Africa).

5. In her role as Vice President Ms. Janssen-Counotte was responsible for all St. Jude ID divisions (including CRM), including sales strategy, planning, and execution in her territory. She also interacted with St. Jude in Texas, Minnesota, and California, and had an understanding of St. Jude's global business and strategy.

**Ms. Janssen-Counotte's Resignation**

6. On June 27, 2014, Ms. Janssen-Counotte informed me that she was resigning to work for another company. I asked her which company, and she responded that the information was confidential and she could not tell me.

7. From June 27 through July 1, 2014, I, along with other St. Jude ID and corporate management, engaged in a number of discussions with Ms. Janssen-Counotte in an effort to persuade her to stay with St. Jude. During these discussions, Ms. Janssen-Counotte continued to refuse to disclose the identity of her new employer.

8. Ms. Janssen-Counotte also stated during these meetings that she had only been in discussions with her new employer for two-to-three weeks.

9. Between June 27 and July 1, 2014, because we were working to retain Ms. Janssen-Counotte, she continued with her duties. She also maintained possession of her laptop computer and access to the network through July 1, 2014.

10. After unsuccessful efforts to retain Ms. Janssen-Counotte, on July 1, 2014 I and other St. Jude ID personnel met with Ms. Janssen-Counotte in person in the office to accept her resignation. During these meetings Ms. Janssen-Counotte was informed that her access to the computer network would be terminated.

11. I met Ms. Janssen-Counotte over breakfast on August 22, 2014. During that meeting, I asked her again where she was going. She responded again that the information was confidential and that she could not tell me.

12. To my knowledge, to this date Biotronik has not publicly announced Ms. Janssen-Counotte's hiring.

13. To my knowledge, at no time before June 27, 2014 did Ms. Janssen-Counotte disclose to me or anyone else in the organization that she was engaging in discussions with Biotronik or that she planned on resigning and beginning employment with Biotronik.

14. Before June 27, 2014 Ms. Janssen-Counotte held herself out as a loyal employee.

15. Among Ms. Janssen-Counotte's duties during the spring of 2014 was to participate in a working group preparing St. Jude's and its affiliates' 5-year global Strategic Plan (the "Strat Plan"). The Strat Plan provides a detailed roadmap to global competitive strategy, including product development, product launches, pricing, market strategy, growth forecasts, data development plans, customer targeting and strategies, market share information, plans and goals, and talent development strategy for the United States and globally. As a member of this working group Ms. Janssen-Counotte obtained highly confidential strategic information regarding global operations, including operations in the United States.

16. From June 2-4 2014, Ms. Janssen-Counotte and I attended a Strategic Planning meeting (the "Strat Plan Meeting") in Dallas, Texas, at which St. Jude and affiliates revealed the

Strat Plan to their highest level executives.  The purpose of the meeting was for St. Jude's executives to discuss and strategize regarding the implementation of this plan on a highly confidential basis.  During the meeting Ms. Janssen-Counotte gained access to confidential trade secrets well beyond those that pertained to her job in Europe, including St. Jude's US trade secrets.

17. Ms. Janssen-Counotte would not have been allowed to attend the Strat Plan Meeting, or participate in the working group's preparation for the meeting if we knew she was discussing, or intended to discuss, potential employment with Biotronik.

**St. Jude Takes Extensive Measures to Protect Its Confidential and Proprietary Information**

18. As a sales organization in the highly technical and competitive medical device industry, St. Jude survives on the integrity of its trade secrets.  As such, all of St. Jude's affiliates, including St. Jude ID, take significant efforts to maintain the secrecy of its confidential information, by adopting policies and implementing procedures designed to safeguard that information

19. For example, St. Jude ID requires its executives to enter into confidentiality agreements.  St. Jude ID also restricts access to confidential information to those within the company who need that information, including through secure access to its facilities, security safeguards on its computer systems, restriction of access to confidential files, and restriction of access to high-level planning meetings such as the Strat Plan meeting.  As a senior executive, Ms. Janssen-Counotte had access to confidential data regarding St. Jude ID and its affiliates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of September, 2014.

Brussels, Belgium

_____
Denis Gestin