**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2014 DEC 17  AM 8: 20
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

**ST. JUDE MEDICAL S.C., INC.,**
**Plaintiff,**

-vs-                                                 Case No.  A-14-CA-877-SS

**LOUISE MARIE JANSSEN-COUNOTTE,**
**Defendant.**

---

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff St. Jude Medical S.C., Inc. (St. Jude S.C.)'s Motion for Temporary Restraining Order and Preliminary Injunction [#2], Defendant Louise Marie Janssen-Counotte (Janssen)'s Response to Application for a Temporary Restraining Order and Preliminary Injunction and Motion to Dismiss for Failure to State a Claim [#18], St. Jude S.C.'s Supplement to Application for a Temporary Restraining Order and Preliminary Injunction [#42], and Janssen's Supplemental Brief in Support of her Motion to Dismiss and her Response in Opposition to Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction and Exhibits thereto Under Seal [#30-2]; Janssen's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Join Indispensable Parties, and Improper Venue [#17], St. Jude S.C.'s Response [#26], and St. Jude S.C.'s Supplement to Response [#41]; Janssen's Motion to Quash Service of Process [#25], and St. Jude S.C.'s Response [#27]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders DENYING Janssen's motions to dismiss, DENYING Janssen's motion to quash, and DENYING St. Jude S.C.'s application for injunctive relief.



## Background

Plaintiff St. Jude S.C. filed this lawsuit seeking injunctive relief against Defendant Janssen to protect itself from alleged actual and threatened misappropriation of trade secrets by Janssen. St. Jude S.C., located in Austin, Texas, is the U.S. sales and marketing arm of the global medical technology company, St. Jude Medical, Inc. (St. Jude Inc.). St. Jude S.C. is responsible for marketing St. Jude Inc.'s products, including cardiac rhythm management (CRM) products, in the United States. Janssen was previously employed in Belgium and the Netherlands by SJM Coordination Center BCVA, a Belgian company, and St. Jude Medical Nederland BV, a Dutch company (collectively, St. Jude Belgium/Netherlands) where she served as a Vice President and focused on European operations.[1] As an employee of St. Jude Belgium/Netherlands, Janssen attended a three-day meeting in Dallas, Texas from June 2–4, 2014 (the Dallas Conference), designed to bring together high-level executives from St. Jude Inc.'s various sub-entities in order to discuss company development and strategy. Over the course of the three days, the attendees were exposed to hundreds of slides, and the presentations included confidential information. In particular, Janssen participated in the development of a five-year global strategic plan (the Strat Plan) for competing against other medical technology companies, and this Strat Plan was one of the focuses of the Dallas Conference.

---

[1] The corporate structure for St. Jude Inc. is not simple. Plaintiff St. Jude S.C. is a subsidiary of St. Jude Inc. *See* Def.'s Resp. Appl. [#18-1], Ex. A (excerpt of St. Jude Inc.'s 10-K). St. Jude Belgium and St. Jude Netherlands are both wholly owned by St. Jude Medical Luxembourg, S.a.r.l., which is owned by SJM International Holding, S.a.r.l., which is wholly owned by St. Jude Medical International, Inc., which is ultimately owned by St. Jude Inc. *Id.* Put differently, St. Jude S.C. and Janssen's former employers—St. Jude Belgium/Netherlands—are separate entities falling under the same parent corporation, St. Jude Inc. To be clear, St. Jude S.C. never employed Janssen, which at least partially explains why St. Jude S.C. asserts a tort-based theory of action as there is no contract between St. Jude S.C. and Janssen.

On June 27, 2014, Janssen announced she was leaving St. Jude Belgium/Netherlands, and although she initially would not disclose her new employer for claimed reasons of confidentiality, Janssen ultimately disclosed on September 8, 2014 she had joined Biotronik, Inc., a competitor of St. Jude S.C., as President of U.S. operations. St. Jude S.C. became concerned Janssen's behavior had been improper and conducted forensic investigations of Janssen's company computer and phone. Based on its research, St. Jude S.C. alleges Janssen began employment negotiations with Biotronik prior to attending the Dallas Conference, and she used removable media devices from late May through her departure from St. Jude Belgium/Netherlands on July 1, 2014, to collect confidential information and trade secrets, including portions of the Strat Plan, to take with her to Biotronik. Specifically, St. Jude S.C. asserts causes of action for: (1) theft and misappropriation of trade secrets and confidential information in violation of Texas Civil Practice & Remedies Code §§ 134A.001 *et seq.* (the Texas Uniform Trade Secrets Act or TUTSA); (2) conversion; and (3) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. *See* Compl. [#1], at 14–18.

Along with the Complaint, St. Jude S.C. also filed an Application for a Temporary Restraining Order and a Preliminary Injunction [#2] seeking, among other things, to enjoin Janssen from holding the position of U.S. President of Biotronik or undertaking any job duties for Biotronik in the area of strategic planning, pricing, marketing, or product development of CRM devices and products until at least September 1, 2015. *See* Pl.'s Appl. [#2], at 10. Janssen responded and also moved to dismiss for failure to state a claim under Rule 12(b)(6). *See* Def.'s Resp. and Mot. Dismiss [#18]. In addition, Janssen moved to dismiss St. Jude S.C.'s complaint for lack of personal jurisdiction, failure to join indispensable parties, and improper venue. *See* Mot. Dismiss [#17].

The Court held a hearing on the application for injunctive relief on September 24, 2014, and afterward the Court took under advisement St. Jude S.C.'s application along with Janssen's motions to dismiss, and ordered expedited discovery in the form of Janssen's deposition. *See* Order of Sept. 29, 2014 [#24]. The Court further ordered the parties supplement their pleadings within twenty-one days of the deposition, which the parties have done. *Id.*; Pl.'s Supplemental Mem. [#42]; Pl.'s Supplement to Resp. [#41]; Def.'s Supplemental Brief [#30-2].

### Analysis

I. **Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Join Indispensable Parties, and Improper Venue**

A. **Personal Jurisdiction**

The Court first addresses the threshold issue of personal jurisdiction. St. Jude S.C. argues this Court has personal jurisdiction over Janssen based on two theories: (1) transient jurisdiction based on service of Janssen while she was in Austin; and (2) minimum contacts based on Janssen's actions in Texas at the Dallas Conference. After review of the pleadings and the current record, the Court concludes it has personal jurisdiction over Janssen based on her contacts with Texas. Therefore, whether transient jurisdiction exists in this case is immaterial. The Court, however, addresses this alternative basis for personal jurisdiction in discussing the pending motion to quash below in Part II.

1. **Legal Standard**

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers first whether

exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* When a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

### 2.     Application

#### a.     General Jurisdiction

St. Jude S.C. does not argue Janssen's contacts with Texas are sufficient for the Court to exercise general jurisdiction over her. Therefore, the Court will not address this issue and will focus on whether there are sufficient contacts to exercise specific jurisdiction over Janssen.

#### b.     Specific Jurisdiction

St. Jude S.C. contends Janssen purposely availed herself of the benefits and advantages of Texas via her communications leading up to the Dallas Conference, including emails with St. Jude employees in Plano, Texas, and her attendance at and participation in the Dallas Conference where she gained access to St. Jude S.C.'s trade secret information. St. Jude S.C. argues Janssen engaged in this behavior in Texas even though she was in negotiations to join Biotronik before, during, and after the Dallas Conference. By committing torts in Texas where the impact of these torts would be felt by a Texas corporation in Texas, St. Jude S.C. asserts its allegations and the current factual record corroborating those allegations satisfies the minimum contacts test.

### i.    Intentional torts can be a sufficient basis for specific jurisdiction

Non-resident defendants purposefully avail themselves of the privilege of acting in a forum state when the content of their communications gives rise to intentional torts. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Even "a single act . . . directed toward Texas that gives rise to a cause of action . . . can support a finding of minimum contacts." *Id.*, 195 F.3d at 211 (citing *Calder v. Jones*, 465 U.S. 783 (1984); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)). In determining whether specific jurisdiction exists, courts may consider the "foreseeable effects of a tort," though "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Id.* at 212. Purposeful availment may be found where "the actual content of communications with a forum gives rise to intentional tort causes of action." *Id.* at 213.

### ii.    St. Jude S.C. makes a prima facie showing to support personal jurisdiction

At this time, St. Jude S.C. need only make a prima facie case Janssen committed a tort partially in Texas. *See Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189 (5th Cir. 1984). If St. Jude S.C. surmounts that obstacle, then the burden shifts to Janssen to show why the exercise of specific jurisdiction would offend due process. Importantly, since the Court did not hold an evidentiary hearing, it must accept St. Jude S.C.'s jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry*, 188 F.3d at 625.[2]

---

[2]While the Court held an evidentiary hearing on September 24, 2014, the witnesses' testimony primarily beared on the issue of injunctive relief and incidentally overlapped with the jurisdictional question. For instance, the witnesses discussed Janssen's attendance at the Dallas Conference and her use of her company computer to supposedly misappropriate trade secrets. But, for the most part, the Court only heard attorney argument on personal jurisdiction, and no witness was called, including Janssen, to specifically address jurisdiction. The motion to dismiss based on personal jurisdiction was filed only the day before the hearing, and there had been no opportunity for discovery. Since

In this case, St. Jude S.C. asserts a variety of allegations and presents supporting facts to make a prima facie case for its three torts: (1) theft and threatened misappropriation of trade secrets and confidential information; (2) conversion; and (3) computer fraud and abuse.   St. Jude S.C. groups its jurisdictional allegations and facts into three parts.  *See* Pl.'s Supplement Resp. [#41], at 2–4.  First, St. Jude S.C. alleges the information shared at the Dallas Conference was highly confidential and included sensitive information specific to the U.S. business of St. Jude.  At her deposition, Janssen acknowledged the confidentiality of the information disclosed at the Dallas Conference.  *See* Pl.'s Supplement Resp. [#41-1], Ex. A (Janssen Depo.), at 166:21–167:15.  Janssen also agreed the five-year Strat Plan presented at the Dallas Conference included information regarding St. Jude Inc.'s global strategy, product development status and plans, product launch plans, and market strategy both for the U.S. and international divisions, which each represent approximately 50% of St. Jude Inc.'s global business.  *Id.* at 109:10–25, 110:13–19.  Janssen viewed all of the slides presented at the Dallas Conference, including the information on the U.S., and in addition she attended breakout sessions outside the main meeting, including one where she learned how the U.S. sales reporting system worked.  *Id.* at 170:5–9, 172:20–173:3, 180:22–183:9.

Second, St. Jude S.C. emphasizes Janssen not only attended the meeting but also prepared input for a set of slides to be included in the Strat Plan.  *Id.* at 112.  As part of these preparations, Janssen received a number of emails regarding the Strat Plan, including discussions and confidential draft documents outside of those she prepared herself and some of which were sent by St. Jude

---

the hearing, the parties have conducted more jurisdictional discovery, including Janssen's deposition and a forensic investigation of her phone.  Of course, a jurisdictional question is one Janssen can raise at any time including during discovery, at trial, or even after trial.  For now, however, the Court holds St. Jude S.C. to a prima facie standard on the pleadings and the factual record as it currently exists.  If Janssen later disputes jurisdiction, the Court will update the standards and burdens to be applied as necessary at that time.

employees in Texas.  *Id.* at 143:8–14, 125:16–130:24; Pl.'s Supplement Resp. [#41-2], Ex. A-10; *id.* [#41-3], Ex. A-11; *id.* [#41-4], Ex. A-12.  Janssen stated she may have responded to these emails or directed one of her team members to do so.  Janssen Depo., at 130:25–131:9.  Janssen admitted those email discussions and drafts involved product areas Biotronik plans to pursue in the U.S. in direct competition with St. Jude.  *Id.* at 142:4–14.

Third, St. Jude S.C. alleges Janssen had entered into negotiations and plans to leave her employment with St. Jude Belgium/Netherlands for Biotronik before she even attended the Dallas Conference, which would indicate she did not attend the meetings in Texas as a loyal employee. Instead, St. Jude S.C. contends Janssen attended the meetings knowing she would soon be leaving and with the intent to take St. Jude's trade secrets and confidential information with her.  St. Jude S.C. has presented evidence corroborating these allegations.  In particular, St. Jude S.C. investigated Janssen's company phone, which revealed text message exchanges with Biotronik personnel and representatives even though Janssen had deleted all communications with these individuals from her company electronic devices and personal email.  *Id.* at 13:3–14:17, 263:25–264:3.

The following timeline provides a sketch of Janssen's activity:

- Beginning at least in May 2014, Janssen became "unhappy" at St. Jude S.C. based on serious concern over business conduct in the Middle East.  *Id.* at 188:11–19.

- On or around May 19, Janssen had a personal meeting with Biotronik's owner, Max Schaldach.  *Id.* at 197:6–19.  Schaldach specifically raised the possibility of a job in the United States.  *Id.* at 198:5–23.

- On May 20, Janssen received a text message from Werner Braun, her "XB" or ex-boss from her previous tenure at Biotronik, which stated:  "Had revealing conversation with my ex-boss.  Want to know more?  XB."  *Id.* at 272:12–273:6. Janssen identified Braun's "ex-boss" as Schaldach.

- On May 24, Janssen sent a series of emails from her company email to her personal email, attaching her: (1) St. Jude Belgium/Netherlands employment contract, (2) 2012 salary information, and (3) her 2014 bonus information. *Id.* at 223:23–224:11. Janssen sent this information because you need it "[w]hen you negotiate with any company" and for "anytime when I, in the future, wanted to leave St. Jude." *Id.*

- On May 26, Janssen, according to her USB registry, inserted forty-one different thumb drives into her company computer on this single day. *See* Pl.'s Supplement Resp. [#41-6], Ex. A-28.

- On May 29, Braun texted Janssen: "Any news?  XB" Janssen Depo., at 271:2–17.

- From June 1–5, 2014, Janssen was in Dallas, Texas to attend the Dallas Conference and participated in Strat Plan presentations and discussions.

- On June 2, 2014, Janssen emailed her St. Jude pension information from her work email to her personal email. *Id.* at 224:12–225:7; *see* Pl.'s Supplement Resp. [#41-5], Ex. A-26.

- On June 6, 2014, Janssen emailed a presentation regarding St. Jude's long-term incentive program for St. Jude employees globally from her work email to her personal email. Janssen Depo., at 225:14–226:12.

- On June 12, 2014, Braun texted Janssen: "He [identified as Schaldach] told me that he offered you a (!) position but did not say which.  He seems to be very confident that y [sic] accept." *Id.* at 264:6–265:22.

St. Jude S.C. has presented this timeline based solely on Janssen's deposition, a limited forensic investigation of her computer and phone, and without the benefit of document discovery or any third-party discovery.  Nevertheless, this record supports a story whereby Janssen began negotiations with Biotronik to join the company before the Dallas Conference; intended to leave St. Jude before, during, and after the Dallas Conference; helped prepare portions of the Strat Plan, including sending emails to St. Jude employees in Texas; knowingly exposed herself to confidential information and the entire Strat Plan at the Dallas Conference; and took this information with her when she left for Biotronik.

Janssen relies on the argument that she attended the meeting as required by her then-employer, St. Jude Belgium/Netherlands, and her attendance therefore did not reflect purposeful availment. Instead, Janssen contends she took the trip to Dallas in her fiduciary capacity, and the fiduciary shield doctrine forecloses the Court from exercising jurisdiction. Janssen's argument is misplaced for two reasons. First, the fiduciary shield doctrine is not applicable because, as Janssen herself notes, the doctrine "forecloses courts from exercising *general jurisdiction*." Mot. Dismiss [#17], at 11–12 (emphasis added). St. Jude S.C. does not suggest the Court may exercise general jurisdiction over Janssen. Second, even if Janssen was required to attend the Dallas Conference, this fact would not render meaningless other facts indicating she was negotiating new employment with Biotronik, she attended the confidential Dallas Conference knowing she intended to soon leave St. Jude for a competitor, and she took St. Jude's proprietary information with her when she left.

Having found St. Jude S.C.'s burden satisfied regarding purposeful availment, the Court next addresses whether the controversy arises out of or is related to Janssen's contacts with Texas. St. Jude's allegations revolve around Janssen's attendance at the Dallas Conference, and while some of the relevant conduct occurred in Europe, Janssen's exposure to the alleged trade secrets occurred in Texas. The Court has no trouble concluding St. Jude S.C.'s causes of action arise out of and relate to the Janssen's contacts with Texas.

Janssen disputes most, if not all, of these allegations and argues there can be no jurisdiction because Janssen did not commit a tort in Texas. *See* Mot. Dismiss [#17], at 13. The Court, however, at this stage is obligated to accept St. Jude S.C.'s jurisdictional allegations as true and resolve all factual disputes in its favor. Janssen's disagreements on the merits of the case are not to be addressed at the Rule 12 stage.

Accordingly, the Court finds St. Jude S.C. has established a prima facie case, and "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air*, 195 F.3d at 215.

### iii.    Janssen has not shown the exercise of jurisdiction would offend due process

"It is rare to say the assertion is unfair after minimum contacts have been shown." *Id.* The Texas Supreme Court has set for the following five factors for evaluating this stage of the analysis: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 155 (Tex. 2013).

Janssen does not specifically address any of these factors but does argue personal jurisdiction over Janssen would be unfair considering she loyally attended the Dallas Conference as part of her job requirements with her European employer. Relatedly, Janssen highlights her employment agreement, which does not contain a non-compete clause for the U.S. and does contain a forum selection clause specifying Belgium as the proper venue to resolve employment disputes. Janssen argues she did not foresee being haled into Texas court based on her European employment against a plaintiff with whom she has no contractual relationship. Janssen's arguments, however, fail to appreciate the nature of St. Jude S.C.'s complaint and the procedural disposition of this motion. St. Jude S.C. has alleged (and backed up with evidence) Janssen committed a tort in Texas against a Texas corporation. Janssen's contractual obligations with St. Jude Belgium/Netherlands do not free

her to commit torts against St. Jude S.C. in Dallas.  And whether she indeed committed the alleged torts is a merits question not mature for consideration at this stage of the litigation.

To the extent the factors described in *Moncrief* apply, the Court finds the exercise of jurisdiction under the current circumstances would not offend due process.  First, there has been no showing of a burden to Janssen by litigating the case in Texas.  She currently resides in the U.S. (New York), and she has already been to Austin to attend the hearing of September 24, 2014. Second, Texas does have an interest in adjudicating a dispute where a nonresident allegedly entered the state to misappropriate a Texas corporation's trade secrets.  Third, St. Jude S.C. has an interest in obtaining its desired relief here in the U.S., which amounts to preventing Janssen from using its trade secrets to compete against it in the U.S. market as the U.S. President of Biotronik.  Janssen has not satisfied her burden and shown this matter is the "rare" and "compelling" case where the assertion of personal jurisdiction would be unfair despite the satisfaction of minimum contacts.  *See Wien Air*, 195 F.3d at 215.

In sum, the Court finds St. Jude's allegations and the current record permit the Court's exercise of personal jurisdiction over Janssen, and Janssen's motion to dismiss based on lack of personal jurisdiction is DENIED.

## B.      Failure to Join Indispensable Parties

Janssen also moves to dismiss the case pursuant to Federal Rule of Civil Procedure 19(b) because the Court does not have personal jurisdiction over indispensable parties to the dispute—Janssen's former employers, St. Jude Belgium/Netherlands.  To determine whether a case should be dismissed under Rule 19, the Court engages in a two-step process.  First, the Court must

determine whether the absent party is necessary and therefore must be joined if feasible.  Under Rule

19(a), a party is necessary if:

> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)    as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1); *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).

If a party is necessary but cannot be joined, either because its joinder would destroy the

court's subject matter jurisdiction or because the court cannot obtain personal jurisdiction over that

party, then the court must determine, under Rule 19(b), whether that party is indispensable, i.e.,

whether "in equity and good conscience" the suit can proceed without that person's involvement in

light of a number of factors.  FED. R. CIV. P. 19(b).  Because the Court concludes St. Jude

Belgium/Netherlands are not necessary parties under Rule 19(a), it need not address the second step

of Rule 19(b).  *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) ("Here, no inquiry under Rule

19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied.").

First, Janssen does not show the Court "cannot accord complete relief among" herself and

St. Jude S.C. under Rule 19(a)(1)(A).  Janssen does not even argue this point and instead focuses on

Rule 19(a)(1)(B).  *See* Mot. Dismiss [#17], at 16.  Complete relief, as described in St. Jude S.C.'s

"Prayer for Relief" in its Complaint, is possible and does not require St. Jude Belgium/Netherlands.

*See* Compl. [#1], at 18–19.  Janssen's basic argument is she never had an employment relationship

with St. Jude S.C., and in order to adjudicate St. Jude S.C.'s claims, the Court will necessarily have to examine Janssen's duties and obligations under her employment agreements with St. Jude Belgium/Netherlands. *See* Mot. Dismiss [#17], at 16. While the Court may indeed need to consider Janssen's contractual obligations, St. Jude S.C.'s lawsuit sounds in tort and is distinct from Janssen's employment relationship with St. Jude Belgium/Netherlands. As St. Jude S.C. explains in its briefing, all of the cases relied upon by Janssen involved breach of contract claims, related contract claims, or claims hinging on the validity of a contract. *See* Pl.'s Supplement Resp. [#41], at 15–16. In contrast, this lawsuit only involves torts and does not turn on interpretation of the employment agreements with St. Jude Belgium/Netherlands. The presence of these European entities is unnecessary to resolving St. Jude's S.C.'s causes of action against Janssen.

Second, St. Jude Belgium/Netherlands are not necessary parties under Rule 19(a)(1)(B) because these entities have not "claimed an interest relating to the subject of the action." In conclusory fashion, Janssen states "St. Jude Belgium and St. Jude Netherlands, as Janssen's former employers, claim an interest relating to the subject of the action." Mot. Dismiss [#17], at 16. Yet Janssen cites no authority suggesting St. Jude Belgium/Netherlands's mere status as Janssen's former employers means they "claim an interest" in this lawsuit under Rule 19(a)(1)(B). As far as the Court is aware, St. Jude Netherlands/Belgium have not claimed any interest in this tort-based dispute between Janssen and St. Jude S.C. Janssen argues if St. Belgium/Netherlands are not parties to this lawsuit, then she is subject to a substantial risk of a second lawsuit by her former employers in which she could face double or otherwise inconsistent obligations. *Id.* The relief St. Jude S.C. seeks, however, is the return of the alleged trade secrets, compensation for damages to St. Jude S.C., and abstention from working for Biotronik in the U.S. until September 2015. None of these remedies

-15-

are potentially inconsistent with whatever relief St. Jude Belgium/Netherlands would pursue in a potential second lawsuit.

Janssen has failed to establish St. Jude Belgium/Netherlands are necessary parties under Rule 19, and the Court DENIES her motion to dismiss this case based on failure to join them in this matter.

## C.    Improper Venue

Janssen moves to dismiss the case for improper venue based on the forum selection clause in her employment agreements with St. Jude Belgium/Netherlands, providing the labor courts of Belgium have exclusive competence to hear all disputes regarding Janssen's employment. *See* Mot. Dismiss [#17], at 20.  The Court rejects this contention for two reasons.  First, the plaintiff, St. Jude S.C., is not a party to the employment contracts, and Janssen provides no explanation for why this forum selection clause should be imposed on a non-signatory.  Second, the provision does not encompass all disputes regarding Janssen's employment as she suggests but rather covers "any dispute concerning the interpretation, the performance and/or the termination of the Employment Contract." *See* Mot. Dismiss [#17-3], Ex. 2 to Janssen's Affidavit (Belgian Contract), art. 18.  St. Jude S.C.'s causes of action do not involve interpretation, performance, or termination of Janssen's employment contracts; they relate to alleged misappropriation, conversion, and fraud committed by Janssen against St. Jude S.C. at least partially while Janssen was in Texas for the Dallas Conference. Janssen's motion to dismiss for improper venue is DENIED.

## II.    Motion to Quash

Janssen has also filed a motion to quash service of process.  On September 22, 2014, Janssen traveled to Austin, Texas to meet with her attorneys in preparation for appearing at the hearing held

before this Court on September 24, 2014.  Outside of this trip to Austin, Janssen's only other visit

to Texas was from June 1–4, 2014, to attend the Dallas Conference.  On September 23, 2014, at

approximately 4:55 p.m., Janssen filed her motion to dismiss for lack of personal jurisdiction.  Later

that same day around 7:45 p.m., Janssen was served with a copy of the summons and complaint in

her hotel in downtown Austin.  St. Jude S.C. contends this service of Janssen while she was in the

forum satisfies the requirements of personal jurisdiction via the doctrine of "tag" or "transient"

jurisdiction. Janssen disagrees, arguing since she had already filed her motion to dismiss challenging

personal jurisdiction, then St. Jude S.C. could no longer validly "tag" her and thereby obtain personal

jurisdiction.

     As far as the Court can tell, the motion to quash service appears to be less about the actual

validity of the service itself and more about whether that service alone confers personal jurisdiction.

As explained above, the Court has already found the pleadings and the current evidentiary record

establish personal jurisdiction in this case, and therefore the issue of whether transient jurisdiction

is appropriate under the circumstances of this matter is inconsequential.  Nevertheless, the Court

briefly addresses the validity of the service in question and the applicability of transient jurisdiction.

     As for the validity of service, Federal Rule of Civil Procedure 4(e) provides:

Unless federal law provides otherwise, an individual . . . may be served in a judicial
district of the United States by:

     (1)  following state law for serving a summons in an action brought in courts
     of general jurisdiction in the state where the district court is located or where
     service is made; or

     (2)  doing any of the following:

     (A)  delivering a copy of the summons and of the complaint to the individual
     personally . . .

FED. R. CIV. P. 4(e).  Texas law states process can be served by "delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto."  TEX. R. CIV. P. 106(a)(1).

Janssen does not dispute she was personally served with a copy of the summons and complaint at her hotel in Austin on September 23, 2014.  *See* Proof of Service [#19].  Personal service is authorized by Rule 4(e)(2)(A) and Rule 4(e)(1) incorporating Texas law.  The service is valid, and the motion to quash is DENIED.

As for whether this service of process confers personal jurisdiction, the general rule is federal courts may always assume jurisdiction over a defendant in any action in which there is personal, in-state service of process.  *See Burnham v. Superior Court*, 495 U.S. 604, 619 (1990) (reaffirming transient jurisdiction as "[a]mong the most firmly established principles of personal jurisdiction in American tradition") (Scalia, J., plurality op.); *Amusement Equip., Inc. v. Mordelt*, 779 F.2d 264, 271 (5th Cir. 1985) (recognizing the "historical truism that the transitory presence of an individual in a state to which he had no connection other than a momentary pause in his movement to other place sufficed to justify a state's exercise of personal jurisdiction").  Applying this straightforward rule, personal service of Janssen while in Austin permits the Court to assume personal jurisdiction over her.

Janssen argues it would violate due process to apply the rule in this case because Janssen was only in Austin to contest the issue of personal jurisdiction as well as oppose the injunction.  While not so stated, Janssen appears to be asserting a service of process immunity, which courts have recognized under limited circumstances.  For instance, a defendant temporarily in a forum may enjoy immunity from service by virtue of her status as a participant in ongoing litigation.  *See N. Lights*

-18-

*Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 62 (1st Cir. 2001) (citing *Burnham*, 495 U.S. at 613; *Lamb v. Schmidt*, 285 U.S. 222 (1932)). The immunity exists, however, "for the convenience of the district court in its exercise of judicial administration, rather than to protect the individual seeking to avoid service of process," and therefore "courts enjoy the discretion to confer (or deny) immunity in such instances." *Id.* (citing *Lamb*, 285 U.S. at 225). Furthermore, the extension of the immunity has largely been limited to cases in which the party was participating "in an *unrelated* litigation" at the time she was served with process in the forum state.[3]

In *Northern Lights*, the case relied upon by St. Jude S.C., the First Circuit Court of Appeals found the defendant was not entitled to process immunity when he entered the forum to attend a personal jurisdiction and preliminary injunction hearing. *Id.* The court refused to adopt "a broad, per se rule precluding the exercise of personal jurisdiction whenever the served individual is in the jurisdiction to attend litigation-related proceedings that pertain to him or her." *Id.* The court instead considered the circumstances and found particularly important the fact the defendant never asked the district court for such immunity, either prior to or following the hearing which had prompted the defendant's presence in the forum. *Id.* at 63. In addition, the court noted the defendant had entered the forum voluntarily to attend the hearing as a spectator and make himself available as a witness in the same case in which he was served with process, not an unrelated litigation. *Id.* These sort of

---

[3]*Id.* at 62–63 (citing *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1460 (10th Cir.1995) (denying process immunity where party was served with process in second lawsuit while attending deposition in first lawsuit alleging similar facts); *In re Fish & Neave*, 519 F.2d 116, 118 (8th Cir.1975) (similar); *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 994–95 (N.D. Ohio 1994) (applying *Lamb* and denying defendants' claim of entitlement to immunity based on appearance in forum state solely to contest personal jurisdiction); 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1080, at 511 (2d ed. 1987) ("There is generally no immunity from service of process when the suit in which immunity is sought is part of, or a continuation of, the suit for which the person claiming immunity is in the jurisdiction."); *see also Lamb*, 285 U.S. at 225, 52 S.Ct. 317 ("[T]he [process-immunity] privilege should not be enlarged beyond the reason upon which it is founded, and . . . should be extended or withheld only as judicial necessities require.")).

voluntary circumstances "are not those that would ordinarily favor a finding of immunity even in a case where it had been timely requested." *Id.*

In contrast, Janssen directs the court to *Glynn v. EDO Corp.*, 641 F. Supp. 2d 476 (D. Md. 2009), which rejected service of the defendant in the forum as sufficient for personal jurisdiction. The defendant, proceeding *pro se*, had traveled to the forum to file a motion to extend time to file a motion to dismiss challenging personal jurisdiction. *Id.* at 481. Because he had not retained local counsel, he could not file electronically and therefore needed to appear in person to file his motion. *Id.* at 486. The court concluded that allowing a defendant who appears in the forum to challenge personal jurisdiction to be simultaneously subject to in-state service of process that renders the personal jurisdiction challenge moot would not comply with the constitutional due process protections of "minimum contacts" and "fair play and substantial justice." *Id.* at 487.

The Court finds the circumstances of this case more analogous to those in *Northern Lights* and concludes Janssen is not entitled to the process immunity exception. First, Janssen has at no point requested immunity from the Court. Second, Janssen appeared in Texas to attend a hearing in the same litigation for which she was served, not an unrelated litigation. Third, Janssen's appearance was voluntary. While Janssen argues that because the potential injunction threatened her employment, she had "little choice but to enter the forum to defend herself," the fact is she had a choice. Def.'s Mot. Quash [#25], at 5. Janssen did not need to come to Texas to either contest jurisdiction or object to any potential injunctive relief. In the order setting the hearing, the Court did not order her to appear, and she ultimately did not testify at the hearing. Of course, Janssen could have requested immunity or she could have waived service, either of which would have allowed her to appear in Texas without risk of being personally served in order to confer personal jurisdiction.

*See* FED. R. CIV. P. 4(e)(2).  Instead, Janssen, based on the record, has proven difficult to serve despite St. Jude S.C.'s many efforts.

While Janssen characterizes St. Jude S.C. as holding "the summons and complaint in its back pocket waiting for the opportunity to personally serve Janssen when she entered the forum to defend herself against Plaintiff's request for an injunction," the record indicates St. Jude S.C. worked diligently to serve Janssen before and even after the personal service in Austin.  *See* Def.'s Resp. Mot. Quash [#27], at 4–8 (documenting in detail St. Jude S.C.'s numerous efforts to serve Janssen at her new workplace in Oregon, at her home in the Netherlands, and in her new home in New York, and the obstacles to service created by Janssen, her new employer, and her attorneys).  Moreover, the circumstances in *Glynn*, the case relied upon by Janssen, are distinguishable because Janssen is not proceeding *pro se* and did not need to come to Texas in order to personally file a motion challenging jurisdiction like the defendant in *Glynn*.

In sum, the Supreme Court has clearly established the continued viability of transient jurisdiction, and the Court declines to adopt—as implied by Janssen's arguments—a per se exception to the rule of transient jurisdiction in cases where the defendant is personally served while in the forum for purposes of asserting a personal jurisdiction challenge.  Rather, the applicability of a process immunity exception depends on the circumstances and the discretion of the Court.  Considering the circumstances, the Court concludes Janssen appeared in Texas voluntarily to attend a hearing in the same litigation for which she was served, and she never requested immunity from the Court.  The Court finds the personal service of process on Janssen in Texas forms an alternative basis for this Court's exercise of personal jurisdiction over her.

### III.    Motion to Dismiss under Rule 12(b)(6)

In opposing the application for injunction, Janssen also moved to dismiss the causes of action against her based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Def.'s Resp. and Mot. Dismiss [#18].  The Court briefly addresses the motion.

Concerning St. Jude S.C.'s theft and threatened misappropriation of trade secrets and confidential information claims under the TUTSA, Janssen's grounds for dismissal amount to premature arguments on the merits.  *See id.* at 5–9.  For instance, whether the information at issue actually constitutes trade secrets, whether St. Jude S.C. adequately protected those alleged trade secrets, whether Janssen acquired any alleged trade secrets improperly, and whether Janssen has disclosed or will disclose the alleged trade secrets are fact questions to be resolved on a full evidentiary record.  St. Jude S.C.'s pleadings, however, clearly allege a cause of action under the TUTSA and satisfy Rule 12.

Regarding conversion, Janssen contends conversion is limited to tangible property, and trade secrets are inherently intangible.  *Id.* at 13.  St. Jude S.C., however, has alleged Janssen wrongfully exercised dominion over tangible USB devices containing St. Jude S.C.'s trade secrets.  *See* Compl. [#1], ¶¶ 55–58.  The Court finds these allegations sufficient to satisfy the requirement the converted property be tangible.  *See Genesco Sports Enter. v. White*, No. 3:11-CV-1345-N (BF), 2011 WL 6593415, at *7 (N.D. Tex. Oct. 27, 2011) (holding allegations "that computer files and data were downloaded onto a USB device and then converted by Defendant" are "sufficient to allege a cause of action for conversion").

With respect to St. Jude S.C.'s claims under the CFAA, Janssen first argues the allegations do not constitute violations of the CFAA which would subject Janssen to jurisdiction in Texas.  As

explained above, there are multiple grounds for the Court's exercise of personal jurisdiction over Janssen, and to the extent the Court lacks jurisdiction specifically over the CFAA claim because the alleged unauthorized computer usage occurred in Europe, the Court may properly exercise pendent jurisdiction over the claim as it arises out of the same facts as the TUTSA misappropriation claims. *See Rolls Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008).

Second, Janssen points out St. Jude S.C. has not alleged she ever improperly accessed a computer belonging to St. Jude S.C. because the computer at issue actually belonged to St. Jude Belgium/Netherlands. Janssen, however, cites no authority requiring a plaintiff have an ownership interest in the computer the defendant accesses without authorization. The statute simply prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). A "protected computer" includes "a computer . . . which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." *Id.* § 1030(e)(2)(B). The Court sees no support for Janssen's position there is an ownership requirement. *See also eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) ("As an initial matter, the use of a third party's computer to access a website, rather than one's own computer, does not prevent a claim under the CFAA.") (citation omitted).

Third and finally, Janssen argues the CFAA claim should be dismissed because she accessed the computer with authorization and for the purpose of doing her job. This is a merits argument and irrelevant at the Rule 12 stage.

The Court DENIES Janssen's motion to dismiss St. Jude S.C.'s claims under Rule 12(b)(6).

## IV.     Application for Injunctive Relief

The Court now addresses St. Jude Inc.'s request for a preliminary injunction to enjoin Janssen from holding the position of U.S. President of Biotronik or undertaking any job duties for Biotronik in the area of strategic planning, pricing, marketing, or product development of CRM devices and products until at least September 1, 2015. *See* Pl.'s Appl. [#2], at 10.

## A.     Legal Standard—Preliminary Injunction

Issuing a temporary restraining order or a preliminary injunction is an "extraordinary and drastic remedy." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation omitted). The Court may issue such extraordinary relief if the movant establishes "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (internal quotation omitted). Because preliminary injunctions are extraordinary remedies, the movant must "clearly carr[y] the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotations omitted).

In arguing the injunction issue, the parties focus solely on the misappropriation claims under the TUTSA. The TUTSA specifically provides "[a]ctual or threatened misappropriation may be enjoined." Tex. Civ. Prac. & Rem. Code § 134A.003. To establish its claim under the TUTSA, St. Jude S.C. will have to establish (1) the existence of trade secrets, (2) its ownership of those trade secrets, (3) that Janssen acquired those trade secrets by improper means, and (4) that Janssen used or disclosed those trade secrets or threatens to do so. *See id.*, § 132A.002(3).

-24-

**B.      Application**

On the current record, St. Jude S.C. fails to satisfy its substantial burden for the "extraordinary and drastic remedy" of injunctive relief.  In particular, St. Jude S.C. fails to show a substantial likelihood of success on the merits, and the proposed injunction barring Janssen from her new position with Biotronik is far too broad and severe given the record as it stands.

**1.      St. Jude S.C. has not met its burden to show a substantial likelihood of success on the merits**

St. Jude S.C. has presented a large amount of evidence supporting its allegations of misappropriation.  For instance, St. Jude S.C. has cited evidence in the record suggesting, among other things: (1) Janssen was unhappy at St. Jude Belgium/Netherlands as early as May 2014; (2) Janssen was in employment discussions with Biotronik prior to the Dallas Conference; (3) Janssen sent emails to herself reflecting her intent to leave St. Jude Netherlands/Belgium prior to the Dallas Conference; (4) Janssen attended the Dallas conference without disclosing her intent to leave; (5) Janssen participated in preparing and viewed the Strat Plan at the Dallas Conference; (6) Janssen was not entirely forthcoming about her plans to leave and her negotiation timeline with Biotronik; (7) Janssen deleted texts, phone contacts, and emails related to Biotronik; (8) Janssen used thumb drives to download confidential information; and (9) Janssen has a box of thumb drives at her house potentially containing some of St. Jude's confidential information and trade secrets.

Yet despite all of this evidence, much of which requires inferences in Janssen's favor, there are still far too many open questions and disputed issues of fact to conclude at this juncture St. Jude S.C. has a substantial likelihood of success on the merits of its misappropriation claim.  While the Court appreciates there has been limited discovery to this point, and much of what St. Jude S.C. must

establish is extremely difficult to prove, the burden still lies with St. Jude S.C.  The burden is heavy

for a reason: preliminary injunctions are a drastic measure.   The severe injunction requested by St.

Jude S.C.—preventing Janssen from holding her current job and broadly limiting duties she can

perform—illustrates this truth.  The Court highlights a few, non-exhaustive examples demonstrating

the current allegations and record's failure to establish a substantial likelihood of success.

### i.      What are the specific trade secrets Janssen misappropriated?

As an initial matter, the Court is not clear on what specific trade secrets are at issue.  St. Jude

S.C.'s theory is Janssen attended the Dallas Conference and in so doing was exposed to the Strat

Plan, which constitutes trade secret information.  Yet St. Jude S.C. cannot generically claim the

entire Strat Plan, which amounted to over 500 slides, as trade secret information.  Without knowing

specifically what trade secrets are at issue, the Court cannot determine whether Janssen took these

trade secrets with her when she left for Biotronik.  Indeed, the Court cannot assess whether the

information is a trade secret at all.

Relatedly, there were no physical copies of the Strat Plan presentation at the Dallas

Conference distributed except to a select few executives, which did not include Janssen.  Hr'g Tr.,

at 39:21, 63:5–64:11; Janssen Depo., at 337:9–12.  If Janssen did not receive physical copies of the

Strat Plan, the Court fails to see how she could have misappropriated it when she left St. Jude

Belgium/Netherlands.

As for what other trade secret beyond the Strat Plan that might be at issue, the Court is again

not clear.  St. Jude S.C. discusses a "Flag Chart," which identifies world-wide product launches, and

there is evidence Janssen downloaded the Flag Chart onto a USB device at some point.  Janssen,

however, used the Flag Chart as part of her normal job duties at St. Jude Belgium/Netherlands. *See*

-26-

Janssen Depo., at 351:17–354:11.  Indeed, Janssen used USB devices to fulfill many of her typical obligations to St. Jude Belgium/Netherlands, including downloading confidential information and trade secrets.  *See, e.g., id.* at 74:18–75:20, 76:21–78:9, 335:14–336:20.  St. Jude S.C.'s forensic work indicating her USB usage, however, does not distinguish between proper work behavior and alleged improper conduct in furtherance of her scheme to misappropriate St. Jude S.C.'s trade secrets.

### ii.      Who owned the trade secrets?

Moreover, even if St. Jude S.C. had specified the trade secrets at issue, it has not shown the plaintiff entity, St. Jude S.C., actually owned those trade secrets.  Instead St. Jude S.C. broadly claims the Strat Plan without making clear which of the many sub-entities of the complex St. Jude Inc. corporate structure is the actual proprietor of which portions.  The Strat Plan covered many topics, medical device industries, and regions, and St. Jude S.C. cannot seriously claim all of it as its trade secret especially when St. Jude S.C. has relied on the partitioning of the various St. Jude entities in bringing this suit in the first place.  To collapse St. Jude Inc. for the purposes of trade secret ownership would undermine the foundation of St. Jude S.C.'s tort lawsuit.  St. Jude S.C. seems to want to claim all of the "U.S.-relevant information" as its own, but this claim is not made clear, much less established as true.  *See* Pl.'s Supplement Appl. [#42], at 11 (listing examples of "U.S.-relevant information" Janssen downloaded onto USB devices).  With the identity of the actual owner of the unspecified trade secrets remaining murky, an injunction would be inappropriate.

### iii.     Did Janssen acquire trade secrets by improper means?

St. Jude S.C.'s evidence suggests Janssen may have known she was leaving St. Jude Belgium/Netherlands for Biotronik and may have even already received her job offer before the

Dallas Conference, but the evidence does not establish this conclusion to a substantial likelihood. The evidence could also support a story whereby Janssen was unhappy at St. Jude Belgium/Netherlands, held some preliminary talks with Biotronik prior to the Dallas Conference, attended the Dallas Conference as required by her employer, St. Jude Belgium/Netherlands and unsure of her future with the company, was privy to trade secret information at the Dallas Conference, ultimately received a job offer from Biotronik to serve as its U.S. President after the Dallas Conference, and accepted a position as Biotronik's U.S. President in mid-to-late June. None of this conduct would be necessarily improper or illegal. Under her contract with St. Jude Belgium/Netherlands, Janssen is prohibited from disclosing confidential information, but she is not prohibited from taking a competing position in the U.S. The fact she attended the Dallas Conference in her role as St. Jude Belgium/Netherlands' employee and was exposed to trade secret information does not mean St. Jude S.C., a U.S. branch of St. Jude Inc., can then prevent Janssen from competing against it in the U.S. market. Janssen's behavior in attending the Dallas Conference may have been improper, but the current record does not support this narrative to a substantial likelihood.

### iv.     Has there been actual or threatened disclosure?

St. Jude S.C. does not contend Janssen has actually disclosed any trade secrets while at Biotronik, so it must rely on some theory of probable or inevitable disclosure. The Court, however, does not see in the record a substantial likelihood of probable or inevitable disclosure. To the extent St. Jude S.C. contends there is probable or inevitable disclosure simply based on the fact Janssen acquired trade secrets while working at St. Jude Belgium/Netherlands, the Court rejects this notion. If accepted, non-disclosure obligations would morph into non-compete agreements. Janssen is already prohibited by law from disclosing any of the trade secrets she learned while at St. Jude

Belgium/Netherlands.  To show a substantial likelihood of threatened disclosure, St. Jude S.C. must establish more than the facts Janssen is the president of a competitor and possesses trade secret information.

> **2.**     **St. Jude S.C. has not met its burden to show the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted**

St. Jude S.C. seeks an injunction prohibiting Janssen from working as the U.S. President of Biotronik or undertaking any job duties for Biotronik in the area of strategic planning, pricing, marketing, or product development of CRM devices and products until at least September 1, 2015. The Court declines to impose such a harsh injunction, especially in light of all the ongoing open questions and disputed fact issues described above.  While St. Jude S.C. insists this lawsuit is solely about the protection of its trade secrets, the injunction reflects a desire to prohibit competition where there is no non-competition agreement.  A sweeping injunction removing Janssen from her current job is not well-tailored to accomplishing the more narrow goal of preventing her from disclosing any of St. Jude S.C.'s trade secrets she may possess.

## Conclusion

In sum, St. Jude S.C.'s allegations and evidence are sufficient to establish jurisdiction and state a claim upon which relief can be granted but are insufficient to merit an injunction, especially the broad injunction requested.  There are simply too many questions and nebulous areas of dispute for the Court to conclude St. Jude S.C. has a substantial likelihood of success of ultimately proving Janssen misappropriated St. Jude S.C.'s trade secrets, and therefore that Janssen should be removed from her position as U.S. President of Biotronik and prohibited from undertaking any job duties for

Biotronik in the area of strategic planning, pricing, marketing, or product development of CRM devices and products.

Accordingly,

IT IS ORDERED that Plaintiff St. Jude Medical S.C., Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction [#2] is DENIED;

IT IS FURTHER ORDERED that Defendant Louise Marie Janssen-Counotte (Janssen)'s Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Join Indispensable Parties, and Improper Venue [#17] is DENIED;

IT IS FURTHER ORDERED that Defendant Janssen's Motion to Dismiss for Failure to State a Claim [#18] is DENIED;

IT IS FINALLY ORDERED that Janssen's Motion to Quash Service of Process [#25] is DENIED.

SIGNED this the _16_ day of December 2014.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE