**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ST. JUDE MEDICAL S.C., INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-CV-00877-SS |
| | § | |
| **LOUISE MARIE JANSSEN-** | § | |
| **COUNOTTE,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**JOINT MOTION FOR ENTRY OF AN AMENDED CONFIDENTIALITY AND
PROTECTIVE ORDER AND REQUESTING RESOLUTION OF DISAGREEMENT
REGARDING PROVISION OF CLASSIFIED INFORMATION TO MS. JANSSEN
AND BIOTRONIK, INC. IN-HOUSE COUNSEL**

Plaintiff St. Jude Medical S.C., Inc. and Defendant Louise Marie Janssen-Counotte hereby file this Joint Motion for Entry of an Amended Confidentiality and Protective Order and Requesting Resolution of Disagreement Regarding Provision of Classified Information to Ms. Janssen and Biotronik, Inc. In-house counsel, and respectfully move the Court as follows:

**DISCUSSION**

On September 24, 2014, the Court entered the Western District of Texas' standard Confidentiality and Protective Order [#23] in this matter. The parties currently agree that additional measures are necessary to adequately protect certain highly sensitive categories of documents and information. Accordingly—with two points of dispute (described below)—the parties agree and jointly move the Court to enter a version of the attached Amended

Confidentiality and Protective Order.[1]  The proposed amended order is based on the Western District's standard order, with the addition of special provisions for information deemed to be "Ultrasensitive Information."  This new classification is reserved for the most highly confidential and commercially sensitive information, such as pricing strategy and marketing strategy.  *See* Amended Order ¶¶ 2(a), 3(d), 20.

The parties also agree as to the additional procedures for protection of Ultrasensitive Information.  The proposed amended order provides that Ultrasensitive Information will be produced directly to a third-party neutral, AlixPartners, who shall in turn maintain two private and secure web sites, one for Plaintiff and one for Defendant.  *Id.* ¶ 20.  The proposed order also governs limited paper production of Ultrasensitive Information, and imposes various safeguards and chain-of-custody requirements on paper copies that are produced to opposing counsel, as well as limiting access by experts and others.  *Id.* ¶¶ 2(a)(ii–iii), 20.

### A.   Two Disputed Issues

Although counsel for both sides have negotiated to agree on the proposed amended order, the parties were unable to agree on two issues, and therefore ask the Court to resolve them.

**1.   Issue 1: Ms. Janssen's Proposed Access to AEO and Ultrasensitive Information**

Ms. Janssen proposes to include the following provision in Paragraphs 2(a) and 2(b), which respectively define "qualified persons" as to Ultrasensitive and AEO information:

> With respect to any information that the Defendant saw while employed by SJM Coordination Center BVBA and St. Jude Medical Nederland B.V., the Defendant may see the information when needed for the good faith defense of the case, but the Defendant shall not retain a copy.

---

[1] The parties attach a form of Amended Protected Order that shows both the undisputed provisions and the disputed provisions and respectfully submit a proposed order that would allow the Court to easily indicate which, if any, of the disputed provisions should be included in the Amended Protective Order and would direct the Parties to submit a clean version of the resulting Order for the Court's signature.

*See* Ex. Proposed Amended Confidentiality and Protective Order ¶ 2(a)(v), (b)(iv).

St. Jude opposes this change, and requests that Ms. Janssen continue to be barred from viewing St. Jude's AEO and Ultrasensitive Information under the amended protected order. Each party states its separate position on this issue as follows:

### a. St. Jude's Position

The change proposed by Ms. Janssen would eviscerate the effectiveness of the Western District's standard protective order. Ms. Janssen is plainly barred under the current protective order (agreed to by her former counsel) from viewing Attorneys-Eyes-Only or Ultrasensitive Information. This is consistent with standard practice in this District. *See* Conf. & Prot. Ord. [23] ¶ 2(a). There is no compelling reason to deviate from this standard practice.

The existing protective order has been in place for almost a year. The parties have painstakingly negotiated the proposed amended order for **since June 2015**, and until September 2, 2015, Ms. Janssen did not raise any desire to view Ultrasensitive or AEO information. As of Wednesday, September 2nd, the parties appeared to be in almost complete agreement on the exact wording and on all substantive issues (save the issue of allowing Biotronik access to Confidential information, discussed below). Counsel for St. Jude was therefore surprised and disappointed when, Wednesday evening, Ms. Janssen suddenly (and for the first time) requested access to AEO and Ultrasensitive Information.

The parties agree that "Ultrasensitive" material is material of the highest sensitivity, such as St. Jude and Biotronik's strategic plans. From St. Jude's standpoint, this is material that Ms. Janssen should not see, and on a reciprocal basis has not asked for St. Jude itself to have access to comparable information from Biotronik. While Ms. Janssen may argue that her access is limited to Ultrasensitive or AEO documents that she has seen previously, this provides little

comfort when considering the breadth of documents that she reviewed and copied in the weeks leading up to her resignation, and used for her own and Biotronik's benefit after leaving. Given that this is a trade secrets case, and that Biotronik and St. Jude are direct competitors, the danger of harm to St. Jude from allowing Ms. Janssen to refresh her memory of these highly sensitive trade secrets is patent. This is particularly so given the concerns raised by St. Jude in its Renewed Application for Preliminary Injunction and for Sanctions.

What is more, Ms. Janssen includes no meaningful limits on her proposed access. Ms. Janssen's inclusion of "when needed for the good faith defense of the case" is of no comfort. There is no mechanism by which St. Jude could either learn of or challenge Ms. Janssen's unilateral determinations that she needs to view specific documents, or the number of times and amount of time she determines that she needs to spend reviewing any of them. In effect, Ms. Janssen is asking St. Jude to simply trust that she will handle these documents appropriately. Given that this entire lawsuit is about the misappropriation of these same documents, and their use in her decision making for Biotronik, St. Jude respectfully asks that the Court not grant Ms. Janssen's request to view AEO and Ultrasensitive Information belonging to St. Jude.

If the Court does grant Ms. Janssen's request, St. Jude respectfully asks that the Court grant a St. Jude representative reciprocal access to view AEO and Ultrasensitive Information designated by Ms. Janssen and third-party Biotronik so that St. Jude can have equally enhanced ability to present its case.

### b. Ms. Janssen's Position

The core allegation in this case is that Ms. Janssen misappropriated certain information that she saw while employed by SJM Coordination Center BVBA and St. Jude Medical Nederland B.V. Yet Plaintiff refuses to show Ms. Janssen the very information she is alleged to

have misappropriated. This is fundamentally unfair and deprives Ms. Janssen of her right to defend herself. Under Plaintiff's proposal, Ms. Janssen could not aid her own defense by educating defense counsel about the documents she is alleged to have taken from St. Jude over a year ago. For example, she knows whether she authored the document and obtained the information from public sources or whether the information was presented publicly. These are issues that bear directly on St. Jude's claim that any of this information constitutes trade secrets. And this is information that she is in the best position to provide.

Plaintiff's argument that the timing of Ms. Janssen's request should weigh against her is misplaced. Her need for this relief became more apparent when Plaintiff filed its renewed motion for preliminary injunction in which it, once again, is seeking to have Ms. Janssen barred from working at her job. However, the documents Plaintiff submitted to the Court to support its request are heavily redacted. While Ms. Janssen was able to provide some information to her counsel by looking at the documents marked "Confidential," she is limited by the large black redaction boxes. Though Plaintiff subsequently submitted Attorneys Eyes Only versions of the same documents in its Reply so the Court could see more, Ms. Janssen currently cannot see these documents and aid in her defense on a motion that seeks to preclude her from her livelihood.

Ms. Janssen does not seek this relief lightly. As the Court is aware, to avoid any subsequent claims about what she may have learned in the first hearing on Plaintiff's request for injunctive relief, Ms. Janssen was not present during St. Jude's presentation. Now that St. Jude has begun to identified documents it contends are trade secrets—documents Ms. Janssen had access to while employed at SJM Coordination Center BVBA and St. Jude Medical Nederland B.V.—the need for the relief Ms. Janssen's seeks from the Protective Order is essential to assist in her defense at the upcoming hearing. Further, it has ramifications for the case going forward.

It has become apparent that Plaintiff will designate most of the documents its produces in this case as Ultrasensitive or Attorneys Eyes Only—designations that will preclude Ms. Janssen from seeing the documents without relief from this Court.

Plaintiff has suggested that allowing Ms. Janssen to see the documents now will cause it additional harm because Ms. Janssen's memory would be "refreshed." But such an argument is inconsistent with Plaintiff's consistent position throughout this case that Ms. Janssen had access to the information while employed by the European companies, already knows it, cannot forget it, and either has or will "inevitably disclose" it now or in the future.

Most fundamentally, unless the Court allows Ms. Janssen to see exactly what she is accused of taking, she cannot properly defend herself. Ms. Janssen should be able to see now any information she has already seen. Ms. Janssen's proposal appropriately protects Plaintiff by not allowing Ms. Janssen to have copies of the documents and by restricting her review to situations when counsel in good faith deems it necessary. Ms. Janssen respectfully submits that her ability to defend herself against the drastic injunction and judgment sought by Plaintiff outweighs any confidentiality concerns given these protections.

The Court should deny Plaintiff's request, made for the first time last night, that a St. Jude employee be able to see Ultrasensitive Information of Ms. Janssen's or Biotronik. Contrary to Plaintiff's argument, this provision is not "reciprocal." Ms. Janssen is seeking to be able to view information she previously had access to and is being accused of knowing and using right now. Plaintiff seeks to have a St. Jude employee see Biotronik's most sensitive business information that it has never seen before and has no legitimate reason ever to see. With respect, Plaintiff's request can only be understood as an attempt to dissuade Ms. Janssen from seeking to see the documents she is accused of misappropriating. This is made even more apparent as Ms.

Janssen has not designated any of her production or information as "ultrasensitive," only Biotronik, who, as Plaintiff argues below, is not a party to this case.

### 2. Issue 2: Biotronik's Proposed Access to Confidential Information

Second, Ms. Janssen proposes that in-house counsel at Biotronik, Inc. be added to the list of persons qualified to obtain Confidential Information under Paragraph 2(c) of the amended protective order. St Jude opposes this change. Specifically, the parties disagree on whether Ms. Janssen should be able to disclose and discuss St. Jude's Confidential Information with in-house counsel at Biotronik Inc. *See* Ex. B., Defendant's Proposed Order ¶ 2(c)(iii). Each party states its separate position on this issue as follows:

#### a. St. Jude's Position

St. Jude respectfully asserts there is no need or basis to change the current protective order to allow disclosure of its Confidential information to Biotronik (or its in-house counsel). Biotronik is not a party to this lawsuit; therefore, it is not entitled to review commercially sensitive information of its competitor, St Jude. As with the first issue, Ms. Janssen is plainly barred under the current protective order (agreed to by her counsel) from disclosing Confidential Information to Biotronik's in-house counsel, consistent with standard practice in this District. *See* Conf. & Prot. Ord. [23] ¶ 2(a–b). There is again no compelling reason to deviate from this standard practice.

As noted, the existing protective order has been in place for almost a year, and as with the first issue, at no point previously did Ms. Janssen indicate a need to make all Confidential Information available to Biotronik's in-house counsel. Accordingly, St. Jude has already produced large numbers of documents under the Confidential designation, with the understanding that such documents cannot be disclosed to Biotronik.

It also bears noting that when Ms. Janssen identified particular Confidential documents that she did wish to disclose to specific Biotronik's in-house counsel (namely, disclosure of Ms. Janssen's deposition transcript) St. Jude worked with Ms. Janssen and agreed to the disclosure. St. Jude remains willing to discuss the disclosure of particular documents going forward. However, the wholesale turnover of all confidential documents to Biotronik's in-house counsel is both unnecessary and unwise.

Lastly, again given that this is a trade secrets case, and that Biotronik and St. Jude are direct competitors, there is obvious and acute danger of harm to St. Jude from disclosing such information to Biotronik. St. Jude therefore asks that should the Court enter the proposed amended order, it should enter St. Jude's version, and thereby continue to exclude Biotronik's in-house counsel from the definition of qualified persons to receive Confidential Information.

**b.    Ms. Janssen's Position**

At the outset, Defendant agrees that Biotronik, Inc.'s in-house counsel cannot be given access to and cannot view information designated as "Attorney's Eyes Only" or "Ultrasensitive Information." The alteration Ms. Janssen seeks solely relates to the "Confidential" documents.

The Original Protective Order provided that Confidential Information can be shared with "if the party is an entity, such officers or employees of the party who are actively involved in the prosecution or defense of this case . . . ." Because only Plaintiff is an entity, this paragraph only applies to Plaintiff. Ms. Janssen is requesting that the provision be applied to allow her similarly to share Confidential Information with in-house counsel at Biotronik, Inc., her employer that is actively involved with her defense. Biotronik, Inc. has a legitimate interest in participating and assisting in the defense to the maximum extent permissible. And Ms. Janssen has attempted to

make her request as narrow as possible by limiting it to in-house counsel at Biotronik, not all "officers or employees."[2]

As discussed above, Plaintiff has designated (and has indicated it will designate) a significant amount of its production as "Attorney's Eyes Only" or "Ultrasensitive Information." Therefore, if Plaintiff truly has a legitimate basis to prohibit Biotronik's in-house counsel from viewing certain information, it has the protection of and ability to make a good faith designation of that information in one of those two higher levels of confidentiality. Plaintiff's proposal that Ms. Janssen make individual requests to Plaintiff's counsel regarding sharing each individual document is unworkable. First, as the case progresses, it puts Ms. Janssen's counsel in the position of potentially disclosing attorney thought processes and work product. Furthermore, it is cumbersome and time-consuming process that puts too much power in the hands of Plaintiff to deny the request. In fact, it took over three weeks to negotiate an agreement to have Biotronik in-house counsel have access to portions of Ms. Janssen's deposition transcript, and that was only after Ms. Janssen challenged the confidentiality designation on the ground that much of the transcript does not contain any of Plaintiff's confidential information. It would also lead to more requests to de-designate information, which would burden the Court.

## CONCLUSION

As the Court will observe, parties are in agreement save for Paragraphs 2(a)(v), 2(a)(iv), and 2(c)(iii) (found on pages 2 and 3 of the proposed order). Ms. Janssen would allow Ms. Janssen to view St. Jude's AEO and Ultrasensitive information, and include in-house counsel of

---

[2] As Plaintiff points out, St. Jude and Biotronik are competitors. Nonetheless, that has not precluded St. Jude from issuing a third-party subpoena to Biotronik, which is currently being handled through the Oregon District Court and a Special Master. Because the parties are operating under the Western District of Texas protective order in that case, any information Biotronik has designated "Confidential" in that proceeding can be reviewed by St. Jude's "officers and employees" involved in the prosecution of the case. The relief Ms. Janssen seeks here is much narrower than that which St. Jude itself may do.

Biotronik, Inc. as qualified persons to receive Confidential information, while St. Jude's version does neither.  The parties ask the Court to resolve the two issues in dispute and order either St. Jude's or Ms. Janssen's versions of the disputed provisions.

      Respectfully Submitted,

*/s/ M. Scott Incerto*

M. Scott Incerto
Texas Bar No. 10388950
scott.incerto@nortonrosefulbright.com
James I. Hughes
Texas Bar No. 24074453
james.hughes@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255

Layne E. Kruse
Texas Bar No. 1742550
layne.kruse@nortonrosefulbright.com
Darryl W. Anderson
Texas Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

*Counsel for Plaintiff St. Jude Medical S.C., Inc.*

Of counsel:

CLIFFORD CHANCE US LLP
Stephen M. Nickelsburg
(Admitted *Pro Hac Vice)*
Roni Bergoffen (Admitted *Pro Hac Vice*)
2001 K Street NW
Washington, DC 20006-1001

*/s/ Charles W. Cohen* (by permission)

Lisa A. Paulson
Texas Bar No. 00784732
Shannon H. Ratliff
Texas Bar No. 16573000
RATLIFF LAW FIRM, PLLC
600 Congress Avenue Suite 3100 Austin,
Texas 78701-2984
(512) 493-9600
(512) 493-9625 (fax)
lpaulson@ratifflaw.com
sratliff@ratlifflaw.com

-and-

Ned H. Bassen (Admitted Pro Hac Vice)
Charles W. Cohen (Admitted Pro Hac Vice)
Jason C. Benton (Admitted Pro Hac Vice)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
(212) 422-4726 (fax)
ned.bassen@hugheshubbard.com
charles.cohen@hugheshubbard.com
jason.benton@hugheshubbard.com

*Counsel for Defendant Louise Marie Janssen-Counotte*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 18th day of September, 2015, a true and correct copy of the foregoing has been sent to the following counsel of record via CM/ECF filing:

Lisa A. Paulson
Texas Bar No. 00784732
Shannon H. Ratliff
Texas Bar No. 16573000
RATLIFF LAW FIRM, PLLC
600 Congress Avenue Suite 3100 Austin,
Texas 78701-2984
(512) 493-9600
(512) 493-9625 (fax)
lpaulson@ratifflaw.com
sratliff@ratifflaw.com

-and-

Ned H. Bassen (Admitted Pro Hac Vice)
Charles W. Cohen (Admitted Pro Hac Vice)
Jason C. Benton (Admitted Pro Hac Vice)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
(212) 422-4726 (fax)
ned.bassen@hugheshubbard.com
charles.cohen@hugheshubbard.com
jason.benton@hugheshubbard.com

            /s/ *M. Scott Incerto*_____
            M. Scott Incerto